UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JORDAN TODD,
an individual,

    Plaintiff,
v.

          Case No.:

HUNTINGTON NATIONAL BANK,
a national association,
PENTAGON, a/k/a PENTAGON FCU,
a federal credit union,
CAPITAL ONE BANK (USA), N.A.,
a national association,
TRUIST BANK, f/k/a SUNTRUST
BANK,
a national association, and
CAVALRY PORTFOLIO
SERVICES LLC,
a foreign limited liability company,

    Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, JORDAN TODD (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, HUNTINGTON NATIONAL BANK, (hereinafter, "Huntington"), PENTAGON, a/k/a PENTAGON FCU (hereinafter, "Pentagon"), CAPITAL ONE BANK (USA), N.A. (hereinafter, "Capital One"), TRUIST BANK, f/k/a SUNTRUST BANK (hereinafter, "Truist"), and CAVALRY PORTFOLIO SERVICES LLC (hereinafter, "Cavalry") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff

1

states:

## PRELIMINARY STATEMENT

1. This is an action brought by an individual consumer for damages for Defendants' violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Defendants improperly verified objectively-inaccurate information related to consumer debt accounts allegedly owed to Defendants on Plaintiff's consumer credit reports and in Plaintiff's consumer credit files as maintained by Equifax, Trans Union, and Experian.

2. More specifically, following disputes from Plaintiff to Equifax, Experian, and/or Trans Union, Defendants each verified information to Equifax, Experian, and/or Trans Union that does not belong to Plaintiff and/or was created as a result of identity theft and fraud.

## JURISDICTION, VENUE & PARTIES

3. Jurisdiction of this Court arises under 28 United States Code, Section 1331, the FCRA, 15 United States Code Section 1681, *et seq.*

4. Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

5. Venue is proper in this District as the acts and transactions described herein occur in this District.

6. At all material times herein, Plaintiff is a natural person residing in Sumner County, Tennessee.

7. At all material times herein, Huntington is a national association with its

principal place of business located at 17 S High Street, Columbus, Ohio 43215.

8. At all material times herein, Pentagon is a federal credit union with its principal place of business located at 7940 Jones Branch Drive, McLean, Virginia 22102.

9. At all material times herein, Capital One is a national association with its principal place of business located at 1680 Capital One Drive, McLean, Virginia 22102.

10. At all material times herein, Truist is a national association with its principal place of business located at 214 N. Tryon Street, Charlotte, North Carolina 28202.

11. At all material times herein, Cavalry is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 1 American Lane, Suite 220, Greenwich, Connecticut 06831.

### FCRA STATUTORY STRUCTURE

12. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

13. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

*Id.* at § e(b) (emphasis added).

14. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

15. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

16. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

17. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the

investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

18. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

19. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## **GENERAL ALLEGATIONS**

20. At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

21. At all material times herein, Defendants, themselves and through their respective subsidiaries, regularly service consumer credit and credit-report information associated with the same.

22. At all material times herein, each Defendant is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

23. At all material times herein, Defendants each report erroneous and fictitious tradeline accounts on Plaintiff's Equifax, Experian, and Trans Union credit reports that do not belong to Plaintiff (hereinafter, "Tradeline Accounts").

24. At all material times herein, Plaintiff did not initiate or authorize any transactions creating the Tradeline Accounts, Plaintiff did not authorize any individual or entity to initiate any transactions in his name creating the Tradeline Accounts, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Tradeline Accounts.

25. Defendants each furnish, report, and publish specific details of consumers alleged outstanding or delinquent debt account to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent account, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

26. At all material times herein, Truist is the successor in interest to SunTrust Bank and is responsible for SunTrust Bank's former conduct.

27. At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of

furnishing consumer reports.

28. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

29. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### PLAINTIFF'S DISPUTES PURSUANT TO THE FCRA AND INFORMATION VERIFIED BY DEFENDANTS IN RESPONSE TO PLAINTIFF'S DISPUTES

30. In or around November 2020, Plaintiff obtained a copy of his credit report as maintained by Trans Union and noticed erroneous and fictitious information being reported as belonging to him.

31. More specifically, Plaintiff's Trans Union report contained several addresses, phone numbers, and tradeline accounts that did not belong to Plaintiff.

32. Prior to December 7, 2020, Plaintiff disputed the erroneous and fictitious information found on his Trans Union report.

33. On or about December 7, 2020, Trans Union responded to Plaintiff's dispute—and verified as accurate—tradeline accounts, including but not limited to a tradeline account furnished by Cavalry.

34. Neither of the above-listed tradeline accounts have ever belonged to Plaintiff. As such, they were erroneously reported and subsequently verified by Cavalry.

35. On or about March 25, 2021, Plaintiff sent a letter to Trans Union—with the assistance of his attorney—disputing the erroneous and fictious information reported by Trans Union, including but not limited to, at least eleven (11) tradeline accounts, at least twelve (12) addresses, at least two (2) telephone numbers, at least ten (10) inquiries that were not authorized by Plaintiff, and at least one (1) employer that never belonged to Plaintiff (hereinafter, "First Dispute"). Please see the attached true and correct copy of the First Dispute letter labeled as Exhibit "A."

36. Each item of information disputed by Plaintiff was specifically identified in Plaintiff's First Dispute. *See* Ex. A.

37. In addition to Plaintiff never being the individual responsible for the Tradeline Accounts, the following five (5) accounts were reported with negative credit information including, but not limited to, "Charge-off" or "placed for collection": a Portfolio Recovery account, a Pentagon account, two (2) Huntington accounts, and a Cavalry account.

38. Trans Union received Plaintiff's First Dispute.

39. Trans Union communicated Plaintiff's First Dispute to Huntington, Pentagon, Capital One, and Truist.

40. Huntington, Pentagon, Capital One, and Truist each received notice of Plaintiff's First Dispute from Trans Union.

41. On or about May 3, 2021, Trans Union sent a letter to Plaintiff in response to his First Dispute and included a copy of Plaintiff's Trans Union credit report as of May 3, 2021. Please see attached true and correct copies of relevant pages

8

from said letter and report labeled as Composite Exhibit "B."

42. Despite Trans Union clearly receiving Plaintiff's dispute which advised that at least eleven (11) accounts were incorrectly reported as belonging to Plaintiff, and despite Trans Union correctly deleting five (5) of such accounts, Trans Union's immediately-aforementioned letter asserted that Trans Union conducted an investigation and that four (4) of the accounts were "verified as accurate" or "verified as accurate and updated."

43. More specifically, Trans Union's letter dated May 3, 2021 asserted that Huntington, Pentagon, Capital One, and a "SunTrust Personal Master" account reported by Truist were each verified by the underlying furnishers and Trans Union continued reporting such accounts as belonging to Plaintiff. *See* Ex. B.

44. On or about June 1, 2021, Plaintiff obtained a copy of his credit report as maintained by Equifax and noticed erroneous and fictitious information being reported as belonging to Plaintiff, specifically, information that never belonged to Plaintiff and should not be associated with Plaintiff.

45. On or about June 6, 2021, Plaintiff filed a police report with the Gallatin Police Department asserting that Plaintiff had been the victim of identity theft and fraud that originated in California. Please see attached a true and correct copy of the final police report labeled as Exhibit "C."

46. At the time, Plaintiff did not know why his credit reports included information that did not belong to him, and therefore, Plaintiff believed such information may have been added to his credit reports as a result of identity theft and

9

fraud.

47. On or about June 30, 2021, Plaintiff sent nearly identical letters to Equifax, Experian, and Trans Union *again* disputing the erroneous and fictious information, including but not limited to, at least eight (8) tradeline accounts on his Trans Union credit report, at least nine (9) tradeline accounts on his Equifax credit report, and at least ten (10) tradeline accounts on his Experian credit report (hereinafter, "Second Dispute"). Please see the attached true and correct copy of the Second Dispute letters including Plaintiff's specific disputes labeled as Composite Exhibit "D."

48. Plaintiff included over fifty (50) pages of documents to each Defendant in support of his Second Dispute.[1]

49. Each item of information disputed by Plaintiff was specifically identified in Plaintiff's Second Dispute. *See* Ex. D.

50. Plaintiff's Second Dispute also disputed erroneous and fictious information, including but not limited to, at least eleven (11) addresses that never belonged to Plaintiff on Plaintiff's Trans Union credit report. *See* Ex. D.

51. Plaintiff's Second Dispute also disputed erroneous and fictious information, including but not limited to, at least three (3) addresses that never belonged to Plaintiff on Plaintiff's Equifax credit report. *See* Ex. D.

52. Plaintiff's Second Dispute also disputed erroneous and fictious

---

[1] The document Plaintiff enclosed with Plaintiff's Second Dispute are omitted from the attached Exhibit D due to file size limitations.

information, including but not limited to, at least seventeen (17) addresses and at least one (1) telephone number that never belonged to Plaintiff on Plaintiff's Experian credit report. *See* Ex. D.

53. In Plaintiff's Second Dispute, Plaintiff advised Defendants that the erroneous accounts and erroneous personal information may have been the result of identity theft and fraud, and Plaintiff attached the June 2021 police report in support of his dispute.

54. Equifax, Experian, and Trans Union each received Plaintiff's Second Dispute.

55. Trans Union communicated Plaintiff's Second Dispute to Cavalry, Huntington, Pentagon, Capital One, and Truist.

56. Cavalry, Huntington, Pentagon, Capital One, and Truist each received notice of Plaintiff's Second Dispute from Trans Union.

57. On or about August 27, 2021, Trans Union sent a letter to Plaintiff in response to his Second Dispute. Please see attached true and correct copies of relevant pages from said letter labeled as Exhibit "E." (old F)

58. Despite Trans Union clearly receiving Plaintiff's First Dispute and Second Dispute—both which advised that at least eight (8) specific accounts were incorrectly reported as belonging to Plaintiff—Trans Union's immediately-aforementioned letter asserted that Trans Union conducted an investigation and that six (6) of the accounts were "verified as accurate" or "verified as accurate and updated."

11

59. The following six (6) tradeline accounts were incorrectly verified as accurate or incorrectly verified as accurate and updated by Trans Union: a Cavalry account, two (2) Huntington accounts, a Pentagon account, a Capital One account, and a "SunTrust Personal Master" account furnished by Truist. *See* Ex. E.

60. Following Plaintiff's Second Dispute, Trans Union continued to report at least eight (8) tradeline accounts on Plaintiff's Trans Union report and in his credit files despite being advised that they do not belong to Plaintiff. *See* Ex. E.

61. On or about November 29, 2021, Plaintiff obtained copies of his credit report as maintained by Equifax and noticed erroneous and fictitious information being reported as belonging to him. Please see attached true and correct copies of relevant pages from Plaintiff's Equifax report labeled as Exhibit "F."

62. More specifically, on Plaintiff's Equifax report, Equifax still reported the following accounts that do not belong to Plaintiff and were previously disputed by Plaintiff: a Pentagon account, two (2) Huntington National Bank accounts, and a Capital One Bank USA NA account. *See* Ex. F.

63. Additionally, Equifax reported an incorrect date of birth for Plaintiff. *See* Ex. G at p. 3.

64. On or about April 19, 2022, Plaintiff *again* disputed the erroneous and fictious information to Defendants, including but not limited to, at least nine (9) tradeline accounts on his Equifax and Experian credit reports and at least twelve (12) tradeline accounts on his Trans Union credit report (hereinafter, "Third Dispute"). Please see the attached true and correct copy of the Third Dispute letter and documents

sent in support of the Third Dispute labeled as Composite Exhibit "G."

65. Each item of information disputed by Plaintiff was specifically identified in Plaintiff's Third Dispute, and Plaintiff enclosed a copy of the police report, an identity theft affidavit, his driver's license, and social security card in support of Plaintiff's Third Dispute. *See* Ex. G.

66. Again, at the time, Plaintiff did not know why his credit reports included information that did not belong to him, and therefore, Plaintiff believed such information may have been added to his credit reports as a result of identity theft and fraud.

67. Plaintiff's Third Dispute also disputed erroneous and fictious personal information, including but not limited to, at least eleven (11) addresses, at least two (2) telephone numbers, and at least one (1) employer that never belonged to Plaintiff on Plaintiff's Trans Union credit report. *See* Ex. G.

68. Plaintiff's Third Dispute also disputed erroneous and fictious personal information, including but not limited to, at least three (3) addresses, at least one (1) telephone number, and at least one (1) date of birth that never belonged to Plaintiff on Plaintiff's Equifax credit report. *See* Ex. G.

69. Plaintiff's Third Dispute also disputed erroneous and fictious personal information, including but not limited to, at least seventeen (17) addresses and at least two (2) telephone numbers that never belonged to Plaintiff on Plaintiff's Experian credit report. *See* Ex. G.

70. Equifax, Experian, and Trans Union each received Plaintiff's Third

Dispute.

71. Equifax, Experian, and Trans Union each failed to respond to Plaintiff's Third Dispute.

72. In or around August 2022, Plaintiff obtained copies of his credit report as maintained by Equifax, Experian, and Trans Union.

73. Following Plaintiff's Third Dispute, Defendants continued to report erroneous and fictitious information being reported as belonging to him and with negative credit information despite Plaintiff's several disputes advising Defendants that such information is false and does not belong to him.

74. More specifically, as of August 2022, Equifax was still reporting a Capital One tradeline that does not belong to Plaintiff.

75. On or about January 27, 2023, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union, *again* disputing Defendants' reporting of information that does not belong to Plaintiff (hereinafter, "Fourth Dispute"). Please see attached a true and correct copy of said Fourth Dispute including Plaintiff's specific disputes and documents sent in support of the Fourth Dispute labeled as Exhibit "H."

76. Plaintiff enclosed a copy of the police report, an identity theft affidavit, his driver's license, and social security card in support of Plaintiff's Fourth Dispute. *See* Ex H.

77. Equifax, Experian, and Trans Union each received Plaintiff's Fourth Dispute.

## **DAMAGES**

78. As a result of Defendants' reporting of the Tradeline Accounts, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Tradeline Accounts if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

79. As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the erroneous Tradeline Accounts, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported erroneous and fictitious Tradeline Accounts being reported as derogatory, negative, or adverse accounts.

80. Plaintiff was denied credit applications, including an automobile loan by Capital One.

81. Overall, Plaintiff suffered damage to his reputation as a result of Defendants' conduct.

82. Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he was not the individual responsible for the erroneous and fictitious tradeline accounts, Defendants would continue to report account information and personal information that does not belong to Plaintiff.

83. Plaintiff retained the Shield Law Group for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

## COUNT ONE
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>

Plaintiff re-alleges paragraphs one (1) through eighty-three (83) as if fully restated herein and further states as follows:

84. Defendants are each subject to, and each violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Trans Union, and Experian correct the Tradeline Accounts on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

85. As described above, despite receiving notice of Plaintiff's disputes, each Defendant willfully and/or negligently continued to unlawfully report account information to Equifax, Experian, and/or Trans Union that did not belong to Plaintiff and should not be associated with Plaintiff.

86. More specifically, Huntington purportedly "verified" its reporting of tradeline accounts no less than four (4) times after receiving notice of Plaintiff's repeated disputes from Trans Union despite such accounts not belonging to Plaintiff and not being associated with Plaintiff.

87. Similarly, Cavalry, Pentagon, Capital One, and Truist purportedly "verified" their respective reporting of the Tradeline Account no less than two (2) times each after receiving notice of Plaintiff's repeated disputes from Trans Union despite such accounts not belonging to Plaintiff and not being associated with Plaintiff.

88. Defendant's refusal to request that Trans Union, Equifax, and Experian correct the Tradeline Accounts to remove information that does not belong to Plaintiff was intentionally, willfully, and knowingly done as Defendants clearly possessed knowledge that the Tradeline Accounts did not belong to Plaintiff and should not have been associated with Plaintiff.

89. Defendants' re-investigations were not conducted in good faith.

90. Defendants' re-investigations were not conducted reasonably.

91. Defendants' re-investigations were not conducted using all information reasonably available to Defendants'.

92. As a result of Defendants' conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making additional credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Tradeline Accounts and Plaintiff did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the accounts with late payment information resulting in several of the accounts being reported as a derogatory, negative, or adverse tradeline accounts.

93. Defendants' conduct was a direct and proximate cause of, as well as a

substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

94. Defendants' actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

 a. Judgment declaring that Defendants violated the FCRA;

 b. Judgment against Defendants for maximum statutory damages for violations of the FCRA;

 c. Actual damages in an amount to be determined at trial;

 d. Compensatory damages in an amount to be determined at trial;

 e. Punitive damages in an amount to be determined at trial;

 f. An award of attorney's fees and costs; and

 g. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

s/ *William M. Kaludis*
William M. Kaludis, BPR# 17433
Shield Law Group
5115 Maryland Way, Suite 911
Brentwood, TN 37027
(615) 742-8020
bill@shieldlawgroup.com
*Counsel for Plaintiff*